Frank Hiscock, Executor, etc., Respondent, *v.* George W. Phelps, Appellant, and other Defendants, Respondents

Where real estate is deeded to the members of a copartnership as individuals, the legal effect of the conveyance is to make them tenants in common; but if the copartnership funds have been expended in the purchase, and the land purchased and used for copartnership purposes by agreement to that end, it is to be treated in equity as copartnership assets. So also where moneys of the firm have been expended in improvements upon real estate so deeded, the same effect follows as to its enhanced value. The creditors of the copartnership are entitled to a priority of payment thereout, and the creditors of an individual member of the copartnership are to be preferred to those of another member, and one member to another or to his creditors for any amount paid in by the one, in excess of the share he was bound to contribute, or in excess of his proportion of the debts of the concern.

Where a mortgage is given by one member of a copartnership to secure an individual debt upon his apparent interest as tenant in common in real estate thus purchased and used for copartnership purposes to a *bona fide* mortgagee without notice of the facts, the latter can repose upon the legal effect of the conveyance, and is entitled to a priority of lien; but if the mortgage is given for a precedent debt, and the mortgagee parts with no valuable thing in reliance upon its security, or if he has knowledge of the facts, he takes his mortgage with notice of the character equity has impressed upon the property, and subject to the equities superior to his own of any and all persons interested in the property.

(Argued March 2, 1872; decided April 2, 1872.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming

a judgment in favor of plaintiff entered upon the report of a referee.    (Reported below, 2 Lans. 106,)

The action was brought for the foreclosure of two mortgages, originally in the name of James M. Cook; upon his death, the present plaintiff, his executor, was substituted.

In May, 1866, Charles G. Kenyon, John P. Shumway, Peter Mumford and John S. Kenyon, residing at Baldwinsville, Onondaga County, N. Y., engaged, by parol, to enter into the business of manufacturing paper, under the firm name of " C. G. Kenyon & Co."

They agreed to purchase real estate, for the purposes of the business, for the sum of $10,000.

The proposition was to each advance $4,000, pay $4,000 on the real estate, and with the balance, $12,000, improve the property.

Charles G. Kenyon was the owner of two-thirds of the property to be purchased.

Jacob M. Cook owned the other third, and conveyed it to Charles G. Kenyon, John P. Shumway, Peter Mumford and John S. Kenyon, May 11th, 1867.

On the same day, Charles G. Kenyon conveyed an undivided half of the premises to John S. Kenyon, John P. Shumway and Peter Mumford.

Cook's grantees gave him a mortgage for the whole purchase price, $3,333.33. Charles G. Kenyon's grantees gave him a mortgage for $2,666.67.

He gave his son John $4,000, in the real estate, as his share.

They went on and improved the property, each of the parties making advances in unequal sums.

June 1st, 1866, Shumway borrowed of the defendant Phelps, who resided at Mount Morris, $1,000, and on the 1st of April, 1867, $450 more.

Upon the 1st of October, 1867, a mortgage was executed and delivered by said Shumway to said Phelps; to secure him money advanced, $1,450, and $1,000 due to Mrs. Shum-

way, mother of John P. Shumway, for what he owed for property got of Phelps as her agent. The mortgage was made for $3,500, Phelps to advance the balance to Shumway.

The referee found that Phelps had no knowledge, at the time of taking this mortgage, that money had been borrowed of Cook by said firm, or that a mortgage was to be given him. That at that time they owed Cook only $1,070.

On the 8th day of August, 1867, the said firm commenced to borrow money of Cook; the talk was as to a loan of $8,000 or $9,000. Moneys were got of him from time to time, until, in November, it amounted to the sum of $8,087.18.

On the 29th of February, 1868, all of the partners gave to Cook a mortgage for $16,772.30, upon the whole premises.

On the 30th of November, 1868, Jacob M. Cook, the mortgagee, commenced this action for the foreclosure of his two mortgages upon the whole premises. The plaintiff died, and Mr. Hiscock was substituted as his executor.

As to the first mortgage the complaint was confessed. The defendant Phelps answered as to the second mortgage, second count of plaintiff's complaint, and asked that his mortgage be protected as a *bona fide* one.

He, however, held that plaintiff's second mortgage was a lien upon the premises prior to defendant's mortgage, and judgment being entered in conformity thereto, defendant Phelps appealed therefrom.

Other facts appear in the opinion.

*J. C. Hunt* for the appellant. The mortgagors held the land as tenants in common, and plaintiff's second mortgage is not entitled to preference. (*Buchan* v. *Sumner*, 2 Barb. Ch., 169; *Corning* v. *Horner*, 2 Selden, 82; Collyer on Partnership, p. 134, § 150; *Cookson* v. *Cookson*, 8 Sim., 529; *Buchan* v. *Sumner*, 2 Barb. Ch., 165; *Kirby* v. *Schoonmaker*, 3 id., 46; *Ketchum* v. *Durkee*, 1 id., 480; *Buckley* v. *Buckley*, 11 Barb., 43; *Ballmain* v. *Shore*, 9 Vesey, Jr., 500; *Coles* v. *Coles*, 15 Johns., 159; *Smith* v. *Jackson*, 2 Edw. Ch., 28.) The referee erred in allowing the Charles

G. Kenyon mortgage the priority for its full amount. (*The Mechanics' Bank* v. *Edwards*, 1 Barb., 271; *Averill* v. *Loucks*, 6 id., 470; *Sage* v. *Chollar*, 21 id., 596; *Stevens* v. *The Bank of Central New York*, 31 id., 290; *Greenwood* v. *Skeel*, 8 id., 593; approved, 3 Kernan, 167.)

*Frank Hiscock*, respondent, in person. Real estate bought with copartnership money and for copartnership purpose is to be treated as copartnership property and part of the firm assets. (*Smith* v. *Glass*, 5 Sand., 669; *Averill* v. *Loucks*, 6 Barb., 19; *Buchan* v. *Sumner*, 2 Barb. Ch., 167; *Smith* v. *Tarlton*, 2 id., 336; *Buckley* v. *Buckley*, 11 Barb., 74; *Downing* v *Colt*, 3 Sand., 284, note *a*; *Van Brunt* v. *Applegate*, 44 N. Y., 544; see *Collumb* v. *Read*, 24 id., 505; see *Sage* v. *Sherman*, 2 Com., 417.) The appropriation of firm property to pay an individual debt, copartnership insolvent, is void. (See *Wilson* v. *Robertson*, 21 N. Y., 587.) The partnership property must first pay partnership debts. (See *Wilder* v. *Keeler*, 3 Paige, 164, 167.) The interest of a partner is his ratable proportion of the assets after payment of debts. (*Hayes* v. *Reese*, 34 Barb., 151.) Phelps took his mortgage subject to all the interests of the members of the firm, and to all the rights of the creditors of the firm. (*Sage* v. *Sherman*, 2 Com., 432; see *Governeur* v. *Lynch*, 2 Paige, 300; *Troup* v. *Hurlbut*, 10 Barb., 354; *Tuttle* v. *Jackson*, 6 Wend., 213; *Grimstone* v. *Harter*, 3 Paige, 421; see, also, other cases cited at § 106, p. 694, vol. 4, Abbott's Digest; *Bank of Orleans* v. *Flagg*, 3 Barb. Ch., 316.)

FOLGER, J. 1st. The first point made here by the appellant is that there was a finding of fact made in the case, which is wholly unsupported by the evidence, and the contrary whereof was established by evidence.

The printed case shows but one exception taken to a finding of fact. It is the finding, " that when Shumway applied to Phelps for the first two loans, he told him who were the members of the firm of Charles G. Kenyon & Co."

It is not apparent how it would aid the appellant if this exception should be sustained. It is not very important whether he was informed who were the individual members of the firm. The material matter is, did he have notice that there was a firm which owned the real estate as partnership property.

But there is some evidence to sustain the finding excepted to. Phelps himself testifies that Shumway told him who the parties were who owned the mill; and this was in such connection as to warrant the referee in the inference that the information was given at the time of the application for the first two loans. Phelps was thus made aware of who were the persons owning the mill; and other testimony and other unquestioned findings show that he knew of the existence of the copartnership.

We think that the finding excepted to is sustained by the evidence, and by the inferences which the referee was warranted in making from it.

2d. The second point made by the appellant is, that the referee refused to make findings of fact as requested by the appellant.

It appears that these requests were made after the making and delivery by the referee of his report, and on the subsequent settlement of the case by him.

It is not needed that we decide now whether the appellant has or has not adopted the proper method of remedying the error, if any had been committed by the learned referee in refusing the requests of the appellant.

In looking over the requests refused, we find none which we could say were for the finding of material facts, and which we could at the same time say were refused where the testimony demanded the finding, save one. The appellant asked that it be found that the mortgage to the defendant Kenyon, does not cover the one-twelfth of the premises conveyed by Cook to Shumway; that is, so much of the one equal undivided third which was bought by the four partners from Cook. It is clear that it did not. Kenyon conveyed to the

other three but an equal undivided half, and he took back from them a mortgage, which the case shows was on the same premises which he had conveyed, and on none other. The referee's finding is, that Kenyon conveyed this half to them, and that a portion of the consideration money was secured by bond and by a mortgage from them, which is a lien on the premises. This evidently means, and should be construed thus, that the mortgage was a lien upon the premises conveyed by Kenyon. So that this fact is found as the appellant desired.

But the learned referee in giving judgment has practically held this mortgage to be a second lien on the whole premises. For he has directed the sale of the whole premises, and after payment of costs and expenses of sale, the payment first from the whole avails of the sale, of the first mortgage of the plaintiff's testator, and the payment second from the whole avails of the sale of this mortgage to Kenyon. Now as this mortgage was not a lien on the whole premises, nor was it a debt due from the partnership to Kenyon, it has no right to a preference in payment over the mortgage of the appellant from the avails of any lands not described in it. And, the mortgage of appellant upon the share of Shumway in the equal one-third purchased from Cook, is to be postponed in the payment of the mortgages, only to the two of the plaintiff's testator. The judgment was so far erroneous.

3d. The deeds of conveyance of the real estate were to all or some of the persons who composed the copartnership, and to them as individuals. The legal effect of the conveyances was to create them tenants in common of the premises therein described; each could deal with his interest as such tenant in common by deed or by mortgage, so as to transfer all the title which he held, or make it all subject to a valid lien. This was so at law, and had there been no more in the case than the deeds of conveyance, would be so here.

The referee has found however, that prior to the execution of the conveyances the grantees named in them had formed a copartnership, had agreed upon the amount of the capital

thereof, the sum which each copartner should pay in, the amount thereof which should be applied to the purchase of this real estate for the use of the copartnership, and the amount thereof which should be used to improve the same and supply it with the machinery necessary for the contemplated business. He has further found, that in pursuance of this agreement they did purchase this real estate, and did execute to secure a portion of the purchase-money thereof, one of the mortgages to the plaintiff's testator and the mortgage to the defendant the elder Kenyon. He has further found, that they entered into the occupation of the premises as copartners, and expended large sums of money in the improvement of the same, for such purpose borrowing money therefor in the name of the copartnership, and the different partners contributing to the purchase and improvement of the premises moneys in different proportions. He has also found that the consideration of the second mortgage to the plaintiff's testator, was money borrowed for the copartnership and applied in part to the improvement of the premises. Under such a state of facts, equity treats real property, though held under such deeds of conveyance, as partnership property. Where tenants in common *prima facie*, are also copartners in business, and partnership funds have been expended in the purchase of the real property for the use of the copartnership, and the same has been used for partnership purposes by agreement to that end, it is to be treated in equity as partnership assets. It is made liable for debts due to the creditors of the copartnership. (*Buchan* v. *Sumner*, 2 Barb. Ch. R., 165.)

And where moneys of the firm have been expended upon such real estate in the improvement of it, the same effect follows as to its enhanced value. And other rules as to the disposition of partnership assets, also come in in such case. The creditors of the copartnership are entitled to priority of payment thereout. The creditors of an individual member of the copartnership are to be preferred to those of another member and one member to creditors of another and to

another member, for any amount paid in in excess of the share he was bound to contribute, or in excess of his proportion of the debts of the concern.

If then the appellant had notice of the true state of the facts concerning this real estate, and the interest therein of Shumway his mortgagor, his mortgage must be deferred to those held by the respondent, and must await a settlement of the partnership affairs, and an ascertainment of the interest of Shumway in the residuum, after payment of all copartnership indebtedness and an adjustment of the relative rights of the several copartners. Did he have such notice?

It is to be confessed that, though the conclusions of law of the learned referee are clear and explicit, the conclusions of fact on this branch of the case, are not beyond cavil either as to the explicitness of them, or as to their being completely sustained by the evidence. He finds that Shumway informed the appellant that he wanted a loan to aid him in paying up his proportion of the moneys he had agreed to advance toward the purchase of the property, and toward making the improvements on it; that when the mortgage was given to the appellant, the premises were occupied by this copartnership for its business, and that the appellant knew of such occupation; that he took his mortgage with notice that the premises had been purchased for copartnership purposes, and were used by them therefor. None of these findings are excepted to, and they have been ratified by the General Term. We must consider them as warranted by the evidence. The most material finding is the last. If by it it is to be understood that the appellant had notice that the premises were purchased to be copartnership property, then the conclusion of law of the referee that the appellant is not a *bona fide* mortgagee, is sustained. And such would seem to be the most reasonable interpretation of his language. The learned referee could scarcely have drawn such a conclusion of law, from a finding of fact which meant no more than that the appellant had notice that the several copartners in their individual capacity, had bought and taken to them-

selves as tenants in common a conveyance of these premises; so that though the ownership was really in them as individuals, the property should be used for the purposes of the copartnership so long as all assented thereto. It would seem rather that, by the phrase "copartnership purposes," he must have meant to convey the idea of that which he, the referee had previously found was the fact, that the premises had been bought to be the property of the copartnership, with its funds, and by agreement of its members. In this view, which we adopt with some hesitation, the conclusion is sustained, that the appellant took his mortgage with notice of the character, which equity had placed upon the premises, of copartnership property, of assets of the firm, primarily liable for the debts of the firm, and to an adjustment of the liabilities of each of the copartners to the others, and to each of them.

On another branch of the case, there is less difficulty. It is apparent from the testimony as well as the findings, that the consideration of the appellant's mortgage was a prior indebtedness not shown to have been discharged or canceled; and that he loaned no money nor surrendered anything with a specific reliance upon the security of an undivided share of Shumway in these premises. The mortgage was executed 1st October, 1867. It was for $3,500, nominally. But the actual consideration was but $2,450 and a promise of a further advance, which advance was not made; $1,000 of the actual consideration was a precedent debt due from Shumway to his mother; $1,000 was borrowed of the appellant, 1st June, 1866; and $450 (the rest of the consideration) on 1st April, 1867. It is not pretended that the $1,000 owing to Shumway's mother, was obtained upon any promise or expectation of the mortgage being given to secure it. It was not until September, 1867, and after all the indebtedness had accrued, that there was mentioned between Shumway and the appellant, the securing of the latter by the specific manner of this mortgage, though the subject of security in general was mentioned April 1, 1867.

So that the appellant can have no legal or equitable right under the deeds of conveyance and the mortgage from Shumway, which can override the equitable right of a creditor of the copartnership, or a member thereof. The claim of the appellant rests upon a strictly legal basis. It depends upon the terms of the deeds of conveyance at law, creating the grantees therein named of whom Shumway was one, tenants in common of the real property conveyed; and upon the mortgage from Shumway creating a lien in favor of the appellant, upon an undivided fourth part thereof. Such is the effect of those instruments at law. And the appellant would be entitled to repose upon their legal effect, if he were a *bona fide* mortgagee without notice of the facts and circumstances, which in equity have impressed upon this real property the character of partnership property and effects. As to notice to the appellant, we have above spoken. But to sustain the claim he now makes, he should have taken his mortgage, not only without notice, but *bona fide*. He should have parted with some valuable thing, in reliance upon the security for the return thereof, which the mortgage seemed to furnish. This he did not, so that he is to be held as taking his mortgage, subject to the equities superior to his own equity, of any and of all interested in the property. And as his equity is only to have a prior right to the share or interest of Shumway as one of the copartners, as that right or interest shall be ascertained on a settlement and adjustment of the affairs of the copartnership, with the creditors of it, and with the copartners between themselves as such, it follows that the testator of the plaintiff, he having been a creditor of the copartnership, is to be preferred as to his two mortgages, to the appellant. And in this view it matters not whether the appellant's mortgage was lawfully recorded or not. For whether or not the plaintiff's testator had from the record of it constructive notice of its existence, his equitable relations to the property, and to those interested in it, were not thereby changed.

It follows also, that the elder Kenyon is to be preferred to the appellant, for any amount to which he is in advance to

the copartnership, more than his proportionate payment into the capital stock, or more than his proportion of the debts of the concern.

We should feel compelled to affirm the judgments of the courts below, were it not for the error as to the priority of the Kenyon mortgage. On this account the judgment must be affirmed with the modification that upon the mortgage to the defendant Charles G. Kenyon, there shall not be applied any of the proceeds of so much of the premises as was obtained by Shumway by the deed from Cook to him and others; and that the mortgage of the defendant Phelps have preference as to those proceeds to the mortgage of the defendant Charles G. Kenyon; and without costs to either party in this court.

All concur.

Judgment accordingly.