EBENEZER B. BEECHER *vs.* HIRAM STEVENS AND OTHERS.

HENRY E. PARDEE AND OTHERS, ASSIGNEES IN BANKRUPTCY, *vs.* HIRAM STEVENS AND OTHERS.

The firm of *A & B* owned real estate as a part of their partnership property. It was agreed between them and *C* that *B* should sell all his interest in the partnership assets to *C*, who was thereupon to form a new partnership with *A*. *B* made a conveyance accordingly, executing to *C* a deed of an undivided half of the real estate, subject to a savings bank mortgage which had been made by the firm. *C* mortgaged this half back to *B* to secure the purchase price and his agreement to pay *B's* share of the debts of the old firm; also agreeing that the property so conveyed to him by *B* should be subject to the payment of the debts of the old firm as fully as before. *A* and *C* on the same day formed a new firm, each partner contributing his interest in the assets of the old firm. The new firm mortgaged the real estate to *D*, subject to *B's* mortgage. The firm of *A & C* afterwards went into bankruptcy, the mortgages to *B* and *D* being both unpaid, but the debts of the old firm being mostly paid. Upon a petition brought by *D* against *B*, praying that *D's* mortgage be declared a superior lien to *B's*, and upon a petition by the assignees in bankruptcy of *A & C* against *B*, praying that his mortgage lien be postponed to the payment of the debts of *A & C* and the adjustment of the accounts between the partners, it was held—

1. That the real estate, being partnership property, was to be treated in equity as if it were personal estate.

2. That a sale of the interest of one partner in partnership property conveys only his interest in the surplus, if any, which may remain after the payment of the partnership debts and the discharge of the liabilities of the partners, *inter sese*; for the property and effects of a partnership belong to the firm, and not to the partners, each of whom is entitled only to a share of what may remain after payment of the partnership debts and after a settlement of the accounts between the partners.

3. That the right or equity that such an interest, when sold, is subject to the payment of partnership debts, is to be enforced only by the remaining partner. Partnership creditors have no specific lien upon partnership property, and the equity that partnership property must be used to pay partnership debts is to be worked out through the partners. Partnership creditors have no lien upon partnership property which has *bonâ fide* been transmuted by the partners into separate estate, or which has been sold in good faith upon dissolution of the partnership by the retiring partner to the remaining partner, or which has been sold in good faith by one partner to a third person, with the consent of the other partner. If the remaining partner waives or abandons his right to have such property subjected to the payment of partnership debts, the creditors have no remedy against the property which has been sold, if the sale is free from fraud.

4. That a mortgage by a partner of his interest in real estate known by the

mortgagee to be partnership property, to secure an individual debt, is not a mortgage of a specific part of the real estate, but of his interest in the portion mortgaged after the payment of the partnership debts and the settlement of the partnership accounts between the partners. This interest is not available to the mortgagee until the firm debts have been paid and the partnership accounts have been discharged, if the other partner chooses to assert his equity, or if subsequent partnership mortgagees, who have a specific lien upon the mortgaged property, assert their priority.

5. That if the mortgage to *B* had been a mortgage of the interest of *C* in the new firm, it would have been subject to the debts of the new firm, provided the other partner, or his assignees in bankruptcy, had not waived their equity.

6. That upon the facts in this case the mortgage was to be regarded as a mortgage back to *B* of the same partnership interest in the old firm which was conveyed to *C*, and not of *C's* interest in the new firm. This mortgage was subject to the payment of the debts of the old firm, if *A* had chosen to assert his equity, but neither *A* nor his assignees in bankruptcy were now claiming any equity for that purpose.

7. It appearing that, by agreement of all the parties, for the purpose of enabling *A & C* to make a larger savings bank mortgage, *B* and *D* had released their mortgages, and that *A & C* had then made a new savings bank mortgage, that *C* then made a new mortgage to *B* upon the undivided half of the real estate to secure the unpaid portion of the purchase price, and that subject to that mortgage *A & C* made a mortgage to *D*, it was held that the mortgage given to *B* was, so far as *A* and the subsequent mortgage was concerned, a continuation of the same security which was originally given to *B*. The assignees of *A* would have no superior equities to those which he himself had, and he could not have asserted a right to have the new mortgage subject to the partnership debts of the new firm.

PETITIONS in chancery brought to the United States District Court for the District of Connecticut, and heard at its September term, 1876, before *Shipman, J.* The cases are fully stated in the opinion.

*H. E. Pardee*, for the petitioners.

*J. I. Hayes*, for the respondents.

SHIPMAN, J. On February 1st, 1873, John McLagon and Hiram Stevens were and for a long time had been partners in New Haven in their business of foundrymen and machinists. As partners they owned their foundry property and other real estate and machinery, which real and personal estate had been purchased with partnership funds, and was partnership property. At this time the partnership owed in secured debts

$26,300; in notes unsecured $34,286; by book accounts $9,686; making a total of $71,282; and their assets amounted upon book to $138,240, of which sum $21,909 was in accounts due the firm. About $11,000 only of this amount was subsequently paid.

At this time the firm was financially embarrassed, and was in need of more cash capital or of more cash funds. It was agreed between the partners and Henry Smith that Stevens should sell out his interest to said Smith, who was thereupon to form with McLagon a new firm under the name of McLagon & Smith. Stevens sold and conveyed to said Smith his interest in said firm of McLagon & Stevens, and by deed conveyed his interest in said real estate and machinery, said interest being described in the deed as one undivided half part thereof, subject to mortgages to the New Haven Savings Bank for $20,000, and a mortgage to Eli Whitney for $7,500.

Smith mortgaged back to Stevens the same undivided half part of said real estate and machinery to secure several notes for the purchase price which was to be paid to Stevens, all amounting to $17,050, which deed was duly executed and recorded. Smith agreed also to pay Stevens's share of the debts of the old firm, except a certain specified portion, and said mortgage also secured the fulfilment of said agreement. The mortgage of Smith was also to be subject to an additional mortgage of $8,000 to be placed thereafter upon the property.

McLagon & Smith thereupon on the same day went into partnership, and by their partnership agreement each partner contributed to the new firm his interest in the property and assets of McLagon & Stevens as his contributory share of the capital stock of McLagon & Smith, and said Smith agreed to pay said Stevens's share of all the liabilities of McLagon & Stevens, except as expressly excepted, and that all the property so conveyed by said Stevens to said Smith should be held subject to the payment of said share as fully as if the same had remained in the name of said Stevens. The entire arrangement in regard to sale, dissolution and formation of a new firm was made in good faith, without fraud, and in the hope that additional pecuniary advantages would be furnished

thereby, so that a successful business might be done by the new firm.

On June 10th, 1874, McLagon & Smith mortgaged said partnership real estate and machinery to Beecher & Todd to secure their endorsements for the benefit of the mortgagors to the amount of $30,000. In September, 1874, another mortgage on said partnership property was executed by McLagon & Smith to Beecher & Todd to secure endorsements in all amounting to $35,000.

In September, 1875, McLagon & Smith desired to obtain an additional savings bank loan. It was agreed that Beecher & Todd should release their mortgages on the foundry property, and that Stevens should release his mortgage, which had been reduced to $10,000, and allow a new savings bank mortgage to be placed on said property for $35,000, and that Stevens should then take a second mortgage from said Smith on the undivided half part of the said real estate for $10,000, and that Beecher & Todd should take a new partnership mortgage on the foundry property to secure endorsements and debts to the amount of $47,000; all which was done and the releases and mortgages were duly recorded. Beecher & Todd's new mortgage specified that it was subject to the Stevens mortgage for $10,000, upon an undivided half part of said real estate.

The amount now due upon Beecher & Todd's mortgage is $41,689.74, and interest to July 14th, 1876, of $1,303.04. In addition Mr. Beecher has paid interest on the savings bank mortgage and insurance premiums amounting to $2,926.96, which sum it is agreed shall take precedence of the Stevens mortgage.

McLagon & Stevens are now in bankruptcy. Their secured debts, not including the Stevens mortgage, are $80,919; their unsecured proved debts are about $19,000; making a total of $99,919. All the McLagon & Stevens debts have been paid, except about $300 or $400. Beecher is the real owner of the Beecher & Todd mortgage, as he has paid all the endorsements which it was given to secure. Smith has drawn out of the new firm at least $8,179 more than his partner. The new firm is largely insolvent. The debts of the old firm were

paid in great part from moneys for which the new firm is still indebted.

Beecher & Todd have brought their petition claiming that the mortgage to them should be preferred to the Stevens mortgage upon the following grounds. 1st. That their mortgage is for a firm debt secured by a firm mortgage for the benefit of the firm, while the Stevens mortgage is to secure an individual debt of Henry Smith to Stevens. 2d. Because in equity Smith & Stevens should be regarded as representing substantially the same interest, and that the indebtedness existing against the firm of McLagon & Stevens has been by their payments changed only in form, but has not been diminished in amount. 3d. That the claim of Hiram Stevens should be deferred to the claims of general unsecured creditors of the firm of McLagon & Smith, of which the claim of Beecher is the largest, and that he has the right, if the previous propositions are not true, to abandon his mortgage, and prove as a general creditor.

The assignees have also brought their petition, praying that the Stevens mortgage shall not be paid, and shall not be a lien upon the property until after the payment of the debts of the firm of McLagon & Smith to their firm creditors, and until after the adjustment of the accounts between the partners, and the payment to the fund belonging to the individual creditors of McLagon, of the amount that may be due to him as between the two partners.

Stevens claims that his mortgage is a valid mortgage, subject only to the savings bank mortgage. His $10,000 debt is represented by four notes of $2,500 each, all of which he owns, except one note which has been assigned to one Rosenblatt to secure a note of $650.

All the parties have appeared and submitted themselves to the jurisdiction of the court, and waived any question whether a summary petition or a bill in equity was the proper mode of procedure.

The real estate was partnership property, and was liable to all the incidents attending such property. It was expressly known by both Stevens and Smith to be partnership estate at

the time of the sale and mortgage in February, 1873. Partnership real estate is treated in equity as if it was personal property.

A sale of the interest of one partner in the partnership property conveys only his interest in the surplus, if any, which may remain after the payment of the partnership debts and the discharge of the liabilities of the partners, *inter sese* ; for "the property or effects of a partnership belong to the firm and not to the partners, each of whom is entitled only to a share of what may remain after payment of the partnership debts, and after a settlement of the accounts between the partners; consequently no greater interest can be derived from a voluntary sale of his interest by one partner, or by a sale of it under execution. In *Taylor* v. *Fields*, 4 Ves. Jr., 396, it was said that a party coming into the right of a partner (in any mode, either by purchase from such partner, or as a personal representative, or under an execution, or commission of bankruptcy,) comes into nothing more than an interest in the partnership, which cannot be tangible, cannot be made available, or be delivered but under an account between the partnership and the partner, and it is an item in the account that enough must be left for the partnership debts." *Bank* v. *Carrollton Railroad*, 11 Wall., 624.

But the right or equity that the interest when sold must be subject to the payment of partnership debts is one to be enforced by the remaining partners, for the partnership creditors have no specific lien upon the partnership property, and the equity that the partnership property must be used to pay partnership debts must be worked out through the partners. Consequently partners may, during the continuance of the partnership, by a sale without fraud, and made bonâ fide, transmute specific partnership property into separate property, and such property will be held as separate estate, not subject specifically to the payment of partnership debts, and upon a dissolution one partner may sell his interest to the remaining partner, who will thereafter hold the property so conveyed as separate estate, provided the sale was made without fraud. *Allen* v. *Center Valley Co.*, 21 Conn., 130 ; *Howe* v. *Lawrence*,

9 Cush., 533; *Hoxie* v. *Carr*, 1 Sumn., 193; *Waterman* v. *Hunt*, 2 R. Isl., 298; *Potts* v. *Blackwell*, 4 Jones Eq., 58. Where one partner conveys his interest in the partnership property to a third person, though the conveyance may be for the payment of an individual debt, the sale is not void as against the partnership creditors. The assignment is only of the partner's interest in the partnership property, and not of specific property, and the amount of interest is to be ascertained upon a settlement of the partnership accounts. The interest which is sold is "individual property, which he had a right to assign, if his partners did not object. They had an equity to have the property subjected to the payment of the partnership debts, and to this equity the partnership creditors might be subrogated, unless the partners themselves waived it. The creditors as such had no lien on the property. They could only operate through the lien of the partners, and if this was given up, they were without remedy, unless they could show fraud." *Case* v. *Beauregard*, 1 Woods, 127, per Bradley, J.

The sale by Stevens to Smith of the former's interest in the partnership property of McLagon & Stevens was one to which the creditors of McLagon & Stevens could not properly object. It was made bonâ fide, and with the knowledge and assent of the remaining partner, was expressed to be subject to the payment of a large share of the debts of the old firm, and was in fact subject to the payment of all the debts, unless prior to the time of the enforcement of the equity by McLagon or his assignees in bankruptcy it had been waived.

A mortgage by a partner of his interest in partnership real estate which is known by the mortgagee to be partnership property is not a mortgage of a specific part of the real estate, but of his interest in the portion mortgaged after the payment of the firm debts and the settlement of the partnership accounts between the partners. This interest is not available to the mortgagee until the partnership debts have been paid and the partnership accounts have been discharged, if the other partner chooses to assert his equity, or if subsequent partnership mortgagees who have a specific lien upon the

mortgaged property assert their priority. *Lovejoy* v. *Bowers*, 11 N. Hamp., 404; *French* v. *Lovejoy*, 12 N. Hamp., 458; *Hiscock* v. *Phelps*, 49 N. York, 97.

It is claimed that the mortgage of Smith to Stevens is governed by the principles which have been suggested, and is a mortgage of the interest of Smith in the new partnership, and therefore subject to the equities of McLagon and his assignees, or of subsequent partnership mortgagees, because the agreement for the sale to Smith and the formation of the new firm was one transaction, and the fact that Smith was to enter into the new firm and place this purchased property as a part of the capital of the new firm was well known to Stevens.

If the mortgage to Stevens had been a mortgage of the interest of Smith in the real estate of the new firm, it is true, upon the authorities already cited, that the security would be subject to the debts of the new business, provided the partner McLagon or his assignees in bankruptcy should not waive but should assert and maintain their equity. But in the absence of any evidence that the mortgage was, or was intended to be, a mortgage of the interest of Smith in the new firm, it is proper to regard the mortgage as a security in the order of time in which it was given, especially as the facts which are proved do not show that any different order of priority was intended. Stevens sold and conveyed his interest in the partnership of McLagon & Stevens, which interest was supposed to be valuable, and for which he was to receive $17,050. This $17,050 was liable to be diminished, if Smith paid any of the debts of the firm which he had not assumed to pay. He did in fact pay $7,050, which payment left $10,000 as the agreed value of Stevens's interest in the partnership. The identical partnership interest which Smith bought, he mortgaged as security for the payment of the purchase price, and then contributed to the new firm, as his contributory share of its capital, the interest in the assets of McLagon & Stevens which he had purchased, and had incumbered. It can hardly be found as a fact that Stevens was to receive as his security, not the interest which he sold, but an interest in a new partnership.

No creditor of McLagon & Smith was misled by the existence of this mortgage, because it was duly recorded. That the amount or interest which Smith contributed to the new firm was burdened with this mortgage was well known to McLagon, and was assented to by him. No secret trust existed in favor of the retiring partner, but his mortgage was understood by all persons.

The equities in favor of the payment of the partnership debts of McLagon & Stevens have been so far satisfied that but $300 or $400 of those debts remain unpaid, and no person is before the court asking for interference with the mortgage upon account of that sum. It is true that the debts of the old firm were probably paid with moneys which are now in large part due from the estate of the new firm, but the creditors advanced their money with legal knowledge of the existence of the Stevens mortgage, and have no equity to be worked out through the assignees of McLagon which is superior to Stevens's equity.

It is not material to the rights of the assignees that Stevens, in pursuance of the agreement which was made in September, 1875, quitclaimed his mortgage in order to allow an additional savings bank mortgage to be placed upon the premises, and took a new mortgage as a substitute for the original one to secure the original unpaid notes, no intervening lien existing upon the property at the time of the execution of the new mortgage. The new mortgage was in equity, so far as McLagon and the subsequent mortgagees are concerned, a continuation of the same security which Stevens originally had, and the transaction must have been so understood by all the parties. There was no satisfaction of the original mortgage. The release was merely for the purpose of allowing an additional first mortgage, and no intervening liens existed upon the property when Stevens's new mortgage was given. His rights were not changed in equity, except that a larger first mortgage had been placed upon the property. The assignees of McLagon have no superior equities to those which he could have claimed, and he could not have asserted a right as a member of the new firm to have the new

mortgage subject to the new partnership debts.    The mortgage of Beecher & Todd was expressly made subject to the mortgage of Stevens.

Let there be a decree dismissing the petition of Beecher & Todd without costs.    Upon the petition of the assignees, there should be a decree that the property, when sold, shall be sold subject to the mortgages as they now stand upon the records of the town.