### TOBIAS *v.* COMMERCIAL SAVINGS BANK.

PARTNERSHIP—FIRM PROPERTY—MORTGAGES—PRIORITY.

A partner sold his interest in the firm, and with it conveyed his interest in the firm real estate, to an incoming partner, taking a purchase-money mortgage on the land, to the giving of which the copartners assented; it being agreed that the incoming partner should make good the deficiency occasioned by the giving of the mortgage by a contribution of money. The firm was thereupon reorganized under new articles, and subsequently executed a trust deed of the property for firm debts contracted after the recording of the retiring partner's mortgage. *Held,* that the title of the new firm was merely an equity of redemption, and subject to the retired partner's mortgage, which was therefore prior to the trust deed executed by the new firm for the payment of its debts.

Appeal from Lenawee; Chester, J. Submitted January 15, 1904. (Docket No. 42.) Decided March 23, 1904.

Bill by Burton E. Tobias, administrator *de bonis non* of the estate of Elizabeth Sinclair, deceased, against the

Commercial Savings Bank and others, to foreclose a mortgage. From a decree for complainant, defendants appeal. Affirmed.

*R. A. Watts*, for complainant.

*John E. Bird (Alanson Bennett*, of counsel), for defendants.

HOOKER, J. On April 18, 1883, Joseph C. McKenzie, James Farrar, and John I. Knapp were equal copartners in business, and carried it on under the name of the Adrian Brick & Tile Machine Company. On that day they purchased the lands described in the bill of complaint in this cause. It is conceded that this was copartnership property. It was deeded to "Joseph C. McKenzie, James Farrar, and John I. Knapp, doing business under the firm name of the Adrian Brick & Tile Machine Company." Farrar's health failed, and it was agreed that he should sell his interest, if he could find a purchaser who should be satisfactory to his copartners. William Humphrey offered himself as a purchaser, and it was agreed by all that he should buy the interest of Farrar in the copartnership, and "step into the business" in place of Farrar; and on October 16, 1883, Farrar signed a bill of sale to Humphrey, by which he assumed to convey all his right, title, and interest in and to the property, assets, rights, claims, choses in action, and demands of said copartnership, subject to all of Farrar's liabilities as such copartner. Farrar and wife also made a warranty deed of the premises in question, the consideration named being $15,000, which deed conveyed the premises (describing them), including the interest of the said James Farrar as copartner with said McKenzie and Knapp in and to the premises; and it was recited in the deed that the interest of the said James Farrar in said premises intended to be conveyed was an undivided one-third interest, subject to any rights and claims of the other members of said copartnership and of said firm therein. On the same day Humphrey exe-

cuted to Farrar a mortgage for $9,500 upon the premises. It contained this language as to the premises, viz. : ''The whole being the same premises and the same interest this day conveyed by said James Farrar 'to the said William Humphrey by deed of even date herewith.'' It was given for a part of the purchase price of the premises. It secured the note mentioned in the bill, and was owned by the complainant's intestate at the time of her death, when this suit was pending. The deed and mortgage were promptly recorded.

Humphrey continued business with McKenzie and Knapp under new articles of copartnership, executed February 1, 1884. This firm subsequently borrowed money from the Commercial Savings Bank, which holds obligations dated April 3, October 7, and November 17, 1895, and January 23, 1896; being indebtedness created after the recording of the mortgage. On August 11, 1897, Humphrey and wife, Knapp and wife, Lizzie M. McKenzie, and Ephraim L. Luther, executor of Joseph C. McKenzie, deeded the premises to Richard A. Watts and Seymour Howell in trust, conditioned to pay the debt due the Commercial Savings Bank. There is now due the complainant upon this note and mortgage over $6,000, said note and mortgage having been duly assigned to his intestate. The bill is filed to foreclose the mortgage, the other parties in interest being made parties defendant. The defendants contend that the property was taken by Watts and Howell, under their deed, discharged of this mortgage, and ask that it be so decreed; the premises having been sold in conformity to the provisions of said trust deed. The court sustained the priority of the mortgage lien and decreed foreclosure, and the defendants have appealed.

The testimony shows that this mortgage was made with the assent of Farrar's copartners, and that it was understood between them and Humphrey that the latter should make good his deficiency occasioned by giving this mortgage by the payment of money into the concern, which

money he was to procure by the sale of securities which he claimed to own. This transaction was nothing more nor less than a sale of Farrar's interest in this portion of the copartnership property of the old firm, which was then and there dissolved. It conveyed such interest subject to the liquidation of firm debts, and subject to the liens of Farrar's copartners, unless they can be said to have waived them. None but these two classes of persons could question the transaction. The copartners do not question it, but freely admit the validity of complainant's mortgage. There are no remaining creditors of the old firm, and the defendants' claim rests upon the proposition that the property must be treated as property of the new firm in favor of creditors.

The deed to Humphrey, and his mortgage back, for the purchase price, of the land, were simultaneous acts. Humphrey's purchase went into the new firm,—the old being dissolved by the transaction,—and was taken by the new firm subject to the complainant's mortgage. Its assets did not include an unincumbered interest in the property received from Humphrey, who then held a legal title to a third interest in this land, but an incumbered one, —except in favor of existing creditors of the old firm,— which, together with the promise to make up the deficiency, constituted the share contributed by him to the new firm, and subsequent transactions were all subject to the Farrar mortgage. A case varying little from the present one is found in Connecticut (i. e., Beecher v. Stevens, 43 Conn. 587). This is perhaps a stronger one than that, inasmuch as in this case the copartners expressly assented to the mortgage, and arranged with Humphrey to make them whole by another and different contribution as his share of the partnership capital or assets. This is in harmony with our own case of Childs v. Pellett, 102 Mich. 558 (61 N. W. 54).

Counsel argue that this land must be treated as personal property belonging to the firm, and subject to the payment of debts, and that Humphrey conveyed nothing

but his interest in the firm assets. In equity this land was subject to treatment as personal property belonging to the old firm, for the purpose of the payment of its debts, —possibly for the purpose of copartnership accounting,— but it was nevertheless land, of which Farrar had the legal title to the undivided one-third. He sold and conveyed a valid legal title; but subject to these equities. One equity was cut off by agreement of the parties; the other, by payment of all debts outstanding at the time of the dissolution. The new firm's interest was limited to the equity of redemption, as already said.

The decree of the circuit court is affirmed, with costs.

MOORE, C. J., CARPENTER and MONTGOMERY, JJ., concurred. GRANT, J., took no part in the decision.