## HENRY McMORRAN AND EDMUND B. HARRINGTON v. SAMUEL A. MURPHY, IMPLEADED WITH ALFRED CHESEBROUGH AND WILLIAM G. CHESEBROUGH.

*Chattel mortgage—Renewal of notes—Payment—Good-faith pur-chaser—Replevin.*

1. Renewal notes given in lieu of others, on which no payments were in fact made, cannot be treated as *payments* of the original notes.
2. In replevin for chattel-mortgaged property, the mortgagor is not estopped from testifying to its sale, prior to the filing of the mortgage, to third parties, to whom he gave no information of said mortgage lien, it being desirable, if such vendees were innocent purchasers, to show that fact and avoid litigation.

Error to Wayne. (Jennison, J.) Argued January 6, 1888. Decided January 19, 1888.

Replevin. Defendant Murphy brings error. Reversed. The facts are stated in the opinion.

*Moore & Moore,* for appellant.

*Moore & Canfield,* for plaintiffs.

MORSE, J. This is an action of replevin for certain steam-pumps and other wrecking apparatus.

The property was sold by plaintiffs to defendant Murphy upon a written contract, which provided, among other things, that all the property described in and sold by virtue thereof—

" Shall be liable, and this agreement shall constitute a lien or mortgage on said property to secure payment of the notes of said second party for amounts above stated, at the times stated; and said first parties are hereby authorized and empowered, in case default is made in payment of said notes, or any of them, when due, to take said property, or any of

it, wherever found, and sell and dispose of the same in the same manner as in case of chattel mortgage on default thereof," etc.

The consideration of the purchase was $29,000. One thousand dollars was paid in cash at the date of the contract, and the balance secured by four promissory notes,—one for $5,000, at 6 months; one for $6,000, at 12 months; one for $7,000, payable in 18 months; and one for $8,000, in 2 years. Two thousand dollars was to be paid by Murphy to retire a note of McMorran's, payable to one Jones, in New York.

The notes and sums mentioned were all paid save the $7,000 and $8,000 notes. These the plaintiffs claimed to be unpaid, and the sum of $15,000, with interest, due and unpaid at the time they issued their writ of replevin. They claimed the right to the possession of the property under the mortgage lien expressed in the contract of sale.

The defendant Murphy claimed that these notes were paid, and exhibited them in his possession and canceled at the time of the trial.

The evidence shows that, when the $7,000 note became due, Murphy did not have the money to pay the same. He made an arrangement with McMorran by which the latter accepted two drafts drawn upon him by Murphy. Murphy discounted these drafts, and paid and took up the note. These acceptances were renewed from time to time until April 25, 1885, when McMorran took them up, and Murphy gave him a new note for $7,000.

The contract and original notes were executed April 13, 1882. At the maturity of the $8,000 note, Murphy was unable to pay it, and gave McMorran a new note for $8,000; taking up the old one. This note was renewed once or twice. No payments were made upon the original note except by the giving of the new note and its renewals.

The plaintiffs demanded the property of Murphy before suit was brought, and he refused to deliver it.

The defendant requested the court to direct a verdict in his favor. The request was refused, and the jury were instructed that, if any of the indebtedness specified in the contract was due and unpaid at the time the suit was commenced, the plaintiffs were entitled to recover; that if the $7,000 and $8,000 notes, then in the possession of the plaintiffs, were in renewal of the notes for similar amounts mentioned in the agreement, the giving of the notes as such renewals would not amount to a payment, and plaintiffs should recover.

We think the court was right in this direction. The evidence is undisputed that no part of the $7,000 or $8,000 notes were paid in fact. The notes finally given in place of them must be considered as renewals of the original ones.

Upon the trial the defendant's counsel undertook to show by the defendant that the title to the property at the time of the demand and the replevin was in other parties, to wit, the International Wrecking Company of Windsor, and the Detroit Tug & Transit Company; which evidence was excluded by the court.

Murphy, at the time the contract was made, was a resident of Detroit. The contract was not filed or recorded there until October 27, 1885,—long after it is claimed it was purchased by these companies.

We think the evidence was admissible. Murphy was not estopped from testifying that he had sold the property, or to whom he had sold it, or that he did not acquaint them with the existence of the mortgage lien upon the property. It is claimed by the counsel for the plaintiffs that there is nothing to show but that these companies were mere myths, and that they are not, if in actual existence, parties to this suit. The defendant, however, was refused any opportunity to show the existence of these corporations. The fact that they were not parties to the suit by name could not preclude them from showing, through the defendant, that the title of the property was

in them, if he saw fit to make that defense. If these companies were in fact the owners of the property, and innocent purchasers, it would be desirable, in order to save litigation, that such fact be shown in this case.

For the error in the rejection of this proposed testimony the judgment of the court below must be reversed, and a new trial granted, with costs to the defendant.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred. CAMPBELL, J., did not sit.