PRESTON NATIONAL BANK OF DETROIT v. PIERSON.

> 112 435
> 120 290,
> 120 442

1. BILLS AND NOTES—LIABILITY OF INDORSER—RENEWAL—FRAUD.
    The holder of a note does not lose his right to attack as fraudulent a conveyance of land by one of the indorsers by subsequently accepting a renewal of the note with the same indorsement.

2. FRAUDULENT CONVEYANCES—HUSBAND AND WIFE.
    A deed of real property, executed by a husband to his wife with a view to protecting himself against the contingency of failure in his business, and purposely withheld from record until, the risks of such business having increased, his assets, aside from the premises so conveyed, are less than his liabilities, is void as against creditors, even though the grantor was solvent at the time of its execution.

Appeal from Genesee; Smith (George W.), J., presiding. Submitted February 2, 1897. Decided April 27, 1897.

Bill by the Preston National Bank of Detroit against Herman L. Pierson and Mary E. Pierson in aid of

execution. From a decree for complainant, defendants appeal. Affirmed.

*Newton & Gold* (*Geer & Williams*, of counsel), for complainant.

*D. P. Halsey* (*Ed. S. Lee* and *George H. Durand*, of counsel), for defendant Mary E. Pierson.

MONTGOMERY, J. This is a bill filed in aid of execution. The defendant Herman L. Pierson was president of the Thread Flouring-Mills Company, and owner of one-fourth of its stock. On the 10th of November, 1892, the milling company made its note for $10,000, due in six months, which note was indorsed by defendant Herman L. Pierson and discounted by complainant. When this note became due it remained unpaid for some 30 days, when $1,000 was paid upon it, and new notes were given for $5,000 and $4,000, respectively. After the maturity of these notes, another $1,000 was paid, and two notes, each in the sum of $4,000, were given. Upon these last-mentioned notes judgment was obtained on the 17th of August, 1895, against the milling company, Herman L. Pierson, Clarence M. Harris, and Ira H. Wilder, who became indorsers upon these later notes. The liability of the milling company and Pierson continued throughout the transactions. After the making of the first note of $10,000, and before its maturity, namely, on the 28th of February, 1893, a disastrous fire occurred, by which the milling company lost its plant and a large quantity of wheat stored in its elevators; the total loss amounting to from $25,000 to $30,000, above insurance. Again, on December 1, 1894, the mill, which had been rebuilt by the company, burned, and a further loss was sustained by the company.

The property sought to be reached by this proceeding is a farm of 280 acres near the city of Flint, worth, substantially, $16,000. This was transferred by the defendant Herman L. Pierson to his wife, Mary E.

Pierson, by a deed bearing date June 2, 1891, and recorded on the 29th day of December, 1892; the consideration expressed being one dollar. The testimony of the parties is that this deed was without consideration other than natural affection, but that the defendant Mary E. Pierson, who was the second wife of defendant Herman L. Pierson, agreed at the time of the conveyance to divide the property at the death of the parties between the two sons of defendant Herman L.,—one by his former wife, and one by the defendant Mary E. Pierson. It further appears by the proofs that at the time of this conveyance, in June, 1891, defendant Herman L. Pierson, besides his interest in the milling company, which was valued at $9,000, owned $3,000 in bank stock, worth par; a mortgage, known as the "Middleton Mortgage," of $2,000; lands in Dakota worth about $3,000; and a lot adjoining the homestead, of $250; or he owned unincumbered property amounting to $17,250. He also owned his homestead, in the city of Flint, worth $4,000 and upwards, subject to a mortgage to his wife of $2,500. His personal indebtedness at this time was $1,100 to his son, an indebtedness to his wife of $2,800 or thereabouts, $800 to his nephew, and about $500 additional. Shortly after the making of the first $10,000 note, the deed to Mrs. Pierson was placed of record, $2,000 of bank stock was transferred to his son, to whom he owed $1,100, and later, in October, 1894, the Middleton mortgage was transferred to his wife; so that, undeniably, at the time that the judgment was obtained, defendant Herman L. Pierson had no property subject to levy and sale on execution,— his homestead being worth nothing above his exemptions and the mortgage to his wife. The testimony fairly shows that at the time of their marriage, many years before the transactions in question, Mary E. Pierson received from her father's estate about $3,750, and that defendant Herman L. Pierson had had the benefit of this money. The mortgage of $2,500 was given to secure a portion of it, and the balance, together with accumula-

tions of interest, remained a debt against Herman L. Pierson. The court below entered a decree setting aside the conveyance of the farm, and subjecting it to a sale under the execution of complainant. Defendants appeal.

Two principal questions are presented:

*First*, whether, in accepting new notes in place of the first, the complainant has lost its right to pursue this remedy.

*Second*, whether, if it be determined that the complainant has the same right which it would have had if proceeding under the first note, the deeding of this farm was fraudulent as to this creditor.

1. The defendants, to sustain their contention under the first proposition, rely upon the case of *Childs* v. *Pellett*, 102 Mich. 567, and contend, on the authority of that case, that this note of $10,000 was paid by the giving of new notes in renewal of the first. That case is not in point. The question there involved was whether one who is liable upon paper as a partner continues liable upon the renewal of such paper by his former partner after the dissolution of the firm, and was well decided upon the principle that after the dissolution of a firm the retiring partner is a mere surety for the performance of the obligations of the firm, and any renewal or extension of time releases him from such obligations. See *Smith* v. *Shelden*, 35 Mich. 42 (24 Am. Rep. 529). But in this case the debt continued throughout, and the liability of Herman L. Pierson continued from first to last. We think, under these circumstances, the bank never lost its right to complain of the fraudulent transfer, if it be held fraudulent. See *Boxheimer* v. *Gunn*, 24 Mich. 372; *Tucker* v. *Drake*, 11 Allen, 145; *McLaughlin* v. *Bank of Potomac*, 7 How. 220; *Thomson* v. *Hester*, 55 Miss. 656; *Moore* v. *Spence*, 6 Ala. 506; *Blue* v. *Penniston*, 27 Mo. 272; Bump, Fraud. Conv. (4th Ed.) § 507.

2. At the time this conveyance was made, in June, 1891, the defendant Herman L. Pierson was solvent. If we include his interest in the milling company, he was

worth, outside his interest in the farm, over and above his individual indebtedness, upwards of $12,000. He was indorser upon paper of the company to the amount of $5,000 at that date, and it does not appear that he became further obligated until the making of the $10,000 note. If the stock in the milling company be deducted, and the liability on the paper of the company be added to his personal liabilities, it will be seen that Pierson had not enough assets, outside his farm, to meet his total liabilities. If the validity of this transfer be referred to the date of the execution of the deed, June 2, 1891, there would be strong ground for holding that the transaction should be sustained. *State Bank of Fenton* v. *Whittle*, 48 Mich. 1. And the fact that the grantee failed to record the deed until some time after would not, of itself, render the transaction void by relation. As was said in *Wooden* v. *Wooden*, 72 Mich. 353, "The object of the registry laws is to protect *bona fide* purchasers, and the fact that it was not recorded would not divest the grantee of her rights, except as to a *bona fide* purchaser or incumbrancer." See, also, *Michigan Trust Co.* v. *Adams*, 109 Mich. 181; *Campbell* v. *Remaly*, ante, 214. But it is contended by complainant that the transaction between the parties indicates that this transfer was made with the purpose of protecting the defendants against the contingencies of the business; that the liabilities of defendant Herman L. Pierson, after this deed was made, exceeded the amount of his available assets, and that the purpose was to provide against the contingency of failure in business; and that the transaction indicates that this deed was purposely withheld from record for some 18 months after its execution. The circumstances tend strongly to support this contention. The milling company was filing annual reports falsely representing the amount of its assets. The milling property was depreciating in value, and it was doubtless clear to Mr. Pierson that the business

was somewhat hazardous.  The defendant Mary E. Pierson, on cross-examination, was asked:

"You stated in your answer that the making of this deed on the 2d day of June, 1891, had nothing whatever to do about the indebtedness between you and him. Is that so?

"A. Only in this way,—that I had nothing to secure me for interest, and I felt as though, if I did not get anything in any other way, I would have that farm.

"Q. After you got the farm, why did he have to turn the other out to you?

"A. It did not have anything to do towards securing it, only I thought—

"Q. You didn't talk that?

"A. Simply thought it. I might have spoken of it to him.

"Q. Notwithstanding you had it, you did not consider it given to you to secure you for anything of this kind; therefore had him turn out this other paper. Is that so?

"A. It might have secured me in one way. If I never did get anything, I would have that much.

"Q. Is that the only way?

"A. All I think of now.

"Q. Afterwards you did not treat it as yours, so you had him make an assignment of the mortgage?

"A. I never treated it as any security for my notes or what he owed me.

"Q. Or anything of that kind?

"A. No, sir.

"Q. There never was any such agreement between you and him?

"A. We didn't agree to that, only we supposed it would."

The defendant Herman L. testified:

"Q. The notes didn't have anything to do with the deed, did they? Is it not a fact that those notes did not have anything to do with your making that deed?

"A. They did have something to do with it.

"Q. What?

"A. Inasmuch, in my mind, as they were not secured; inasmuch as they were not secured—

"Q. There was no security?

"A. None.

"*Q.* She got a little afraid of you?

"*A.* No, sir.

"*Q.* Why was not her security just as good that day as the day before or the year before?

"*A.* She asked me to give her a deed.

"*Q.* What for? What did she want you to give her a deed for?

"*A.* Because she said she wanted the farm.

"*Q.* Because she asked you for it, you gave it to her, did you?

"*A.* Taking all the family relations into consideration, I did."

This witness also testified in another proceeding that at the time of the execution of this deed a paper was executed by defendant Mary E. Pierson to him, declaring a trust, which he orally states to have been in favor of his two sons. This paper is not produced, and in this proceeding the witness testifies that the understanding or agreement was oral. These conflicting statements go far to discredit the witness, and we think, under all the circumstances of the case, that the inference is fairly deducible that this deed was not intended to take immediate effect, and was not placed of record until it became apparent that the risk of the business was increasing; that it was executed with a view to such possible contingency, and that when the contingency arose it was made use of; and that in the absence of such contingency it never would have made its appearance. It remained all the time after its execution, and before its record, in the secretary of the defendant Herman L. Pierson, to which he had at least common access with the defendant Mary. In this respect the case resembles somewhat *Fetters* v. *Duvernois*, 73 Mich. 481.

We think that the decree of the court below is right and should be sustained.

HOOKER and MOORE, JJ., concurred. LONG, C. J., and GRANT, J., did not sit.