ALLEN *v.* HILLMAN.

1. BANKRUPTCY — TRUSTEE — FRAUDULENT CONVEYANCES—FEDERAL BANKRUPTCY ACT.

The right of a trustee in bankruptcy to maintain a suit for the cancellation of certain deeds as in fraud of creditors does not depend upon State statutes providing for bills in aid of execution or judgment creditors' bills, but on the Federal bankruptcy act (30 U. S. Stat. p. 565, as amended, 36 U. S. Stat. pp. 838, 840).

2. SAME—RIGHT TO FILE PETITION BASED ON BANKRUPTCY.

The right of a person to file his petition in bankruptcy is based on the fact that he has debts which he is unable to pay.

3. SAME—PROOF OF INDEBTEDNESS—SUFFICIENCY.

Claims against a bankrupt procured from the files of the referee in bankruptcy, who had marked them "filed and allowed," on a certain date, followed by his signature, which were identified and the indebtedness proven by the claimants, sufficiently established the existence of the indebtedness.

4. SAME—ORIGINAL NOTES NOT PAID BY RENEWALS.

Renewal notes of others extending back to the date of an alleged fraudulent conveyance by a bankrupt will not be treated as payment of the original indebtedness.

5. SAME—CONVEYANCE TO WIFE FRAUDULENT.

A conveyance by a bankrupt to his wife, *held*, on the record, to have been without consideration and void as against his creditors.

6. SAME—LIEN ON PROCEEDS OF FRAUDULENT CONVEYANCE.

Where the wife conveyed to third parties and received a mortgage back, the court below properly decreed that the trustee in bankruptcy have a lien upon the mortgage sufficient to pay the bankrupt's debts.

Appeal from Sanilac; Beach (Watson), J. Sub-

mitted June 17, 1921.    (Docket No. 93.)    Decided
July 19, 1921.

Bill by Walter J. Allen, trustee in bankruptcy of
Isaac Hillman, against Isaac Hillman and others for
the cancellation of certain deeds in fraud of cred-
itors.    From a decree for plaintiff, defendants appeal.
Affirmed.

*A. B. Simonson,* for plaintiff.

*C. F. Gates* and *W. H. Burgess,* for defendants.

SHARPE, J.    On November 12, 1918, the defendant
Isaac Hillman filed a petition in voluntary bankruptcy
under the Federal bankruptcy act.    The plaintiff was
appointed trustee of his estate.    The bill of complaint
alleges that claims aggregating $1,730.75 have been
filed, proven and allowed against the estate, and that
the plaintiff as trustee thereof has no property in his
hands or available to pay such indebtedness.    He
prays that certain conveyances made by the bankrupt
and other members of his family may be set aside
and the title to the lands described therein be decreed
to be in him as such trustee, to the end that the same
may be sold and the proceeds thereof applied on such
indebtedness.

It appears from the record that Isaac Hillman on
October 29, 1915, was the owner of 200 acres of land
in the county of Sanilac, described as follows: North-
east ¼ of northeast ¼, section 27, west ½ of north-
east ¼, section 24, east ½ of southwest ¼, section
13, all in township 10 north, range 13 east.    On that
date he conveyed the last two descriptions to his wife,
the defendant Jane Hillman, by quitclaim deed, for an
expressed consideration of one dollar, and on the same
day he conveyed the 40 on section 27 to one Harrison
Banks for a consideration of $2,000 and subject to a

mortgage thereon to the Lapeer County Bank of $1,000. On October 16, 1918, Jane Hillman conveyed the 160 acres on sections 13 and 24 by warranty deed to the defendant J. Edgar Hillman, their son, for an expressed consideration of $3,000. On October 31, 1918, J. Edgar Hillman and his wife, the defendant Martha E. Hillman, conveyed the east 40 of the 80 acres on section 13 to Isaac and Jane as husband and wife for an expressed consideration of $1,111, and on the same day they executed a mortgage on the 80 acres on section 24 and the 40 retained by him on section 13 to Jane Hillman in the sum of $3,000. The bill alleges that all of these conveyances, except that to Harrison Banks, were made without adequate consideration and were fraudulent against the creditors of Isaac Hillman, and that those made in 1918 were in anticipation of the voluntary petition in bankruptcy filed by him a few days thereafter.

The trial court found that the deed from Isaac to his wife Jane of the 160 acres was executed without consideration and, without setting aside the deed from Jane to the son, J. Edgar, adjudged and decreed—

"that plaintiff trustee have a lien upon and is the owner of so much of and such portion of said mortgage held by the said Jane Hillman as aforesaid, as shall be sufficient"

—to pay the amount of the claims as allowed and the interest thereon and the costs, and that plaintiff have—

"a lien on said mortgage and the note or notes given in connection with said mortgage as fixed by this decree, which shall be considered and operate as an assignment of so much and such part of said note and mortgage as may be sufficient to pay to plaintiff"

—the amounts before stated.

The right of the plaintiff to maintain this suit does not depend upon our State statutes providing for bills in aid of execution or judgment creditors' bills, but

on the bankruptcy act itself (30 U. S. Stat. p. 565, as amended in 1910, 36 U. S. Stat. pp. 838, 840). The powers and duties of trustees under this act are considered by Mr. Justice FELLOWS in *Grand Rapids Trust Co.* v. *Nichols,* 199 Mich. 126, and in *Courtney* v. *Youngs,* 202 Mich. 384. In the former case it was said:

"This trustee, therefore, when he was appointed * * * had the right to pursue property transferred by the bankrupt in fraud of his creditors, * * * and he also had * * * the rights of a judgment creditor holding an execution duly returned unsatisfied; in other words, he had all the rights of a creditor who had taken all the steps preliminary to filing a creditor's bill."

The right of Isaac Hillman to file his petition in bankruptcy was based on the fact that he had debts which he was unable to pay. The claims in question, and these were the only ones filed, were procured from the files of the referee. There was noted on each of them, "Filed and allowed Feb. 28, 1919. George A. Marston, Referee." They were identified and the indebtedness proven by the officials of the banks by whom they had been filed. We think the existence of the indebtedness was sufficiently established.

Was such indebtedness contracted prior to October 29, 1915, when the first of such conveyances was made? We think it satisfactorily appears that the notes, which were the bases of the claims filed with the referee, were renewals of others extending back to the date mentioned. It will serve no useful purpose to incorporate the evidence relating thereto in this opinion. The renewals will not be treated as a payment of the original notes. *McMorran* v. *Murphy,* 68 Mich. 246; *Preston Nat. Bank* v. *Pierson,* 112 Mich. 435; *Gladwin State Bank* v. *Dow,* 212 Mich. 521.

The important question is whether the execution and

delivery of these conveyances were a fraud upon the rights of such creditors. In view of the provisions of the decree, we are concerned only with the deed from Isaac to Jane, dated October 29, 1915. If this is void as against the then creditors of Isaac, the court could properly impress on the mortgage given to her by the son, J. Edgar, the payment of the debts of Isaac which were allowed by the referee. Her claim is that when owner of the east ½ of the southwest ¼ of section 13 in 1907 she deeded it to her husband, Isaac; that though this deed recited a consideration of $2,000, none was paid and the money still owing her, and that Isaac, being indebted to her for the value of this 80 acres, "had a perfect right to deed the land to apply upon that honest indebtedness."

We are not impressed that the testimony establishes that this transaction was *bona fide* and for the purpose claimed. It does not appear that she had any considerable property when she married Isaac, or afterwards became possessed of any in her own right. While entitled to hold under her original title, she voluntarily conveyed to her husband. He thereafter handled the property as his own and incurred the indebtedness in question on the strength of his financial standing, dependent largely upon his ownership of this land. There is considerable evidence tending to show that Isaac expressed his purpose to dispose of his farm so as to prevent these claimants from collecting on their notes. The court sustained defendants' objection to questions concerning how the original deed came to be made to her. It is clear from the record that it was not purchased with her money. We feel constrained to hold on the entire record, as did the trial judge, that this conveyance was made without consideration and was void as against the then creditors of Isaac. The homestead rights of the defendants are in no way affected by the decree. We think

the manner in which the trial court provided for the payment of the claims filed was fair and equitable and justified by the proofs.

The decree is affirmed, with costs to plaintiff.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.