THE MOLSONS BANK v. BERMAN.

BILLS AND NOTES—RENEWAL OF NOTE NOT PAYMENT—DEFENSES—
    GOOD FAITH HOLDER.

> Where a bank, in the usual course of business, purchased
> a note without knowledge that it had been given in pay-
> ment for corporate stock sold in violation of the blue sky
> law, and, after it had knowledge of that fact, took a re-
> newal of the note, such renewal did not constitute payment
> of the original note, in the absence of an express agree-
> ment to that effect, so as to constitute the bank a holder
> in bad faith, under the uniform negotiable instruments
> act (2 Comp. Laws 1915, § 6097), and render available the
> defense that the note was void because of the violation of
> said act.

Error to Wayne; Webster (Arthur), J.   Submitted
June 13, 1923.   (Docket No. 77.)   Decided October
1, 1923.

Assumpsit by The Molsons Bank against Frank Ber-
man on a promissory note.   Judgment for plaintiff
on a directed verdict.   Defendant brings error.   Af-
firmed.

*Robert M. Brownson*, for appellant.

*Van Dyke, O'Brien & August* (*Stevenson, Carpenter,
Butzel & Backus*, of counsel), for appellee.

STEERE, J.   Plaintiff brought this action in the
Wayne county circuit court to recover from defendant
the amount of the following promissory note:

"Due Sep. 13th, 1920.

"THE MOLSONS BANK,

Windsor, Ontario.

"Prin.   $1,600.00
"Int.   $   10.85
        _____
        $1,610.85

For authorities discussing the application of the blue sky
laws, see notes in 15 A. L. R. 262; 24 A. L. R. 523.

"Windsor, Ont., 9th August, 1920.
"One month after date I promise to pay to the Order of Fisher-Wilkie, Limited...........at the Office of The Molsons Bank here the sum of.........Sixteen hundred......no/100 Dollars for value received with interest at 7% per annum both before and after maturity until paid.

(L. B. D.)     (Signed)   "FRANK BERMAN,
(1791   )                        579 Virginia,
                                    "Detroit, Mich.

(Indorsed on Back)
"FISHER-WILKIE LIMITED.
"Roy R. Fisher,
Pres."

This note is the fourth renewal of a note for $2,000 taken by plaintiff from the payee, Fisher-Wilkie, Limited, on April 8th, and falling due April 30, 1920. At each renewal defendant reduced the indebtedness $100.   All the notes were of like form varying only in dates, and amounts as reduced by payments.   The indebtedness these notes represented was for stock purchased by defendant in March from the Fisher-Wilkie, Limited, a company doing a foundry and machine shop business in Sandwich, Ontario.   It was sold to him in Detroit by Roy R. Fisher, president of the company, without having secured from the Michigan securities commission authority to sell stock of his company in this State as required by the so-called "blue sky law."   At the close of the testimony both parties requested a directed verdict.   The trial court directed a verdict in favor of plaintiff for the amount of the note and entered judgment thereon.

In essential features the circumstances of this controversy are kindred to those in *The Molsons Bank* v. *Wolf*, *ante*, 526.   There, as here, the original note was given to the Fisher-Wilkie, Ltd., for its stock sold to the payor of the note in Detroit and discounted by it at plaintiff bank in Windsor, Canada, with the

payor's knowledge, and renewed by him when due, the action being for recovery on a renewal note. In both cases the original note was amongst those listed' in the "Assignment of contracts, notes or bills to The Molsons Bank" quoted in that opinion. It also appears in this case that when the original note was given and discounted at plaintiff's bank neither the payor nor payee nor plaintiff knew that the sale of the stock was in violation of the blue sky law. The manager of the bank testified that the note was taken in due course of banking business, in good faith with no circumstances to raise doubts as to its validity; the original note and renewals were dated in Windsor, he did not know defendant, had no knowledge that the note was made in Detroit, or of the Michigan blue sky law, but admits that he learned of it about the middle of July, 1920, which was before the date of the renewal note sued on, both in this and the *Wolf Case*. Defendant knew that his note would be discounted by the payee at plaintiff's bank, but had no personal interview on the subject with any officer of the bank, as did Wolf.

In the *Wolf Case* a verdict was directed for defendant by the trial court. On review this court held that the bank was a *bona fide* holder in good faith and entitled under the cases cited to a verdict for the full amount of the note. In the application of those principles we find no distinguishing features in the facts of this case. Our uniform negotiable instruments act provides (2 Comp. Laws 1915, § 6097):

"To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or such knowledge of such facts that his action in taking the instrument amounted to bad faith."

*Vide Hakes* v. *Thayer*, 165 Mich. 476; *Van Slyke* v. *Rooks*, 181 Mich. 88.

It is to be noted, however, that in this case defendant's counsel most strenuously urges and argues the proposition that this court is committed to the doctrine that renewal is payment, and the bank having taken the renewal note sued on with prior notice of its claimed infirmity by reason of the blue sky law cannot recover. In other words when defendant gave the renewal note plaintiff knew of the blue sky law which might, if known to it, have been a defense to the original note under which the credit was given and indebtedness incurred.

In support of the doctrine that surrender of the original note and acceptance of a renewal note constitutes a payment of the former, defendant's counsel especially cites *Childs* v. *Pellett*, 102 Mich. 558, and *Citizens' Commercial Bank* v. *Platt*, 135 Mich. 267, where that doctrine appears to be quite plainly stated; but in the *Pellett Case* the court was dealing with a situation where the renewal was by other parties than those to the original note, and the vital question involved was whether a non-renewing maker or indorser was released by a renewal note bearing the signature of different parties. In the *Platt Case*, which cites the *Pellett Case* as authority for the statement that receipt and acceptance of each renewal note constitutes a payment of the former, the original note was payable to Houran & Whitehead, who discounted it at the bank, and renewal notes made payable at the bank were given, bearing the indorsement of the firm. Houran defended on the ground that Whitehead had no authority to sign the firm name to the renewals. Plaintiff recovered judgment on the renewal note, which was affirmed on appeal, this court holding Whitehead had such authority, on the assumption

"that when the first renewal note was given they were still liable on the first note." If the statement that renewal was payment had any application in that connection it was to the effect that while renewal constituted a payment of the former note, in the sense that it had served its purpose as live evidence of the debt, it did not extinguish the debt and recovery could still be had on the renewal.

In *Preston Nat. Bank* v. *Pierson*, 112 Mich. 435, a note for $10,000 had been given. Thirty days after it became due $1,000 was paid and renewal notes given for the balance, which was followed by another payment of $1,000 and new renewal notes upon which judgment was obtained after they fell due, followed by a bill in aid of execution. Defendant contended that the $10,000 note was paid by giving new notes in renewal and complainant was remediless, citing and relying upon the *Pellett Case.* Of this contention the court said:

"That case is not in point. The question there involved was whether one who is liable upon paper as a partner continues liable upon the renewal of such paper by his former partner after the dissolution of the firm, and was well decided upon the principle that after the dissolution of a firm the retiring partner is a mere surety for the performance of the obligations of the firm, and any renewal or extension of time releases him from such obligations. See *Smith* v. *Sheldon*, 35 Mich. 42 (24 Am. Rep. 529). But in this case the debt continued throughout, and the liability of Herman L. Pierson continued from first to last. We think, under these circumstances, the bank never lost its right to complain of the fraudulent transfer, if it be held fraudulent. See *Boxheimer* v. *Gunn*, 24 Mich. 372; *Tucker* v. *Drake*, 11 Allen (Mass.), 145; *McLaughlin* v. *Bank of Potomac*, 7 How. (U. S.) 220; *Thomson* v. *Hester*, 55 Miss. 656; *Moore* v. *Spence*, 6 Ala. 506; *Blue* v. *Penniston*, 27 Mo. 272; Bump, Fraud. Conv. (4th Ed.), § 507."

To which might be added *Davis* v. *Welch*, 128 La. 785 (55 South. 372), in which it is said that taking a new note in partial renewal of an old one upon which a payment has been made does not operate a novation or extinguish the original debt or the pledge securing the same.

In *McMorran* v. *Murphy*, 68 Mich. 246, it was held that renewal notes given in lieu of others past due, upon which no payment was made, could not be treated as payment of the original.    The trial court instructed the jury that if the notes then in possession of plaintiffs—

—"were in renewal of the notes for similar amounts mentioned in the agreement, the giving of the notes as such renewals would not amount to a payment, and plaintiffs should recover."

In affirming the case this court said:

"We think the court was right in this direction. The evidence is undisputed that no part of the $7,000 or $8,000 notes were paid in fact.    The notes finally given in place of them must be considered as renewals of the original ones."

In *Gladwin State Bank* v. *Dow*, 212 Mich. 521 (13 A. L. R. 1233), a note had been renewed 47 times and when action was brought on the last renewal the defense of usury was interposed.    The trial court directed a verdict for plaintiff for the amount of the note sued on, less interest upon it.    The authorities on that subject were reviewed at some length in an opinion by Justice FELLOWS and it was held, in substance, that renewals were not payment of the usurious debt evidenced by the original note and the original taint of usury attached to all consecutive renewal notes.

In *Allen* v. *Hillman*, 215 Mich. 312, this court, by analogy, applied that rule conversely and held, in substance, that renewal notes extending back to a valid

original debt, incurred prior to the date of an alleged fraudulent conveyance by a bankrupt, were enforceable. Finding the existence of the original indebtedness satisfactorily shown, it is said:

"Was such indebtedness contracted prior to October 29, 1915, when the first of such conveyances was made? We think it satisfactorily appears that the notes, which were the bases of the claims filed with the referee, were renewals of others extending back to the date mentioned. It will serve no useful purpose to incorporate the evidence relating thereto in this opinion. The renewals will not be treated as a payment of the original notes. *McMorran* v. *Murphy*, 68 Mich. 246; *Preston Nat. Bank* v. *Pierson*, 112 Mich. 435; *Gladwin State Bank* v. *Dow*, 212 Mich. 521."

It appears that the authorities in other jurisdictions are not entirely in harmony on this subject. To the general proposition that renewal of a note is payment of it excerpts of unqualified *dictum* can be extracted from some of our decisions, but this court has never held that the so-called payment of the original note by a renewal note paid the debt, in the absence of a novation or express agreement of the parties. A note is but evidence of the debt which still exists if the note is lost or destroyed and is not extinguished until it is in fact paid in money or something expressly accepted as such.

In 2 Daniel on Negotiable Instruments (6th Ed.), § 1266*a*, it is said:

"The general rule seems to be that the delivery or surrender to the maker of the old note upon its being renewed does not in itself raise a presumption of extinguishment by the new, it being considered a conditional surrender, and that its obligation is restored and revived if the new note be not duly paid, and the same rule applies where the new note is carried to judgment."

That rule is fully recognized in the *Preston Bank Case,* and we find nothing to the contrary in the dis-

position of later cases where the question of renewal was the controlling issue.     No question of novation or other express agreement modifying the rule is involved here.     In the *Pellett Case* there were new parties to the renewal note and the court consistently held renewal was payment as to those not party to the new agreement.     In the *McMorran Case* the original notes had been surrendered, and finding the original indebtedness unpaid the court held the renewals were not payments.     It, together with the *Preston* and *Gladwin Bank Cases,* were cited and followed in the more recent case of *Allen* v. *Hillman, supra.*

Counsel for the defense dwells upon the testimony of the manager of the bank on cross-examination to the effect that they considered the old note wiped out and absolutely settled on receipt of the renewal note, and urges that it is conclusive evidence of payment, making each transaction "a separate and distinct negotiation from that of the preceding one."     His statement of opinion as to the legal effect of what was done, or how they considered it, is of slight significance.     The testimony as to what took place shows that the bank's discounting and renewal of those notes was in the usual course of the banking business as customarily transacted.     Had there been a special agreement between the parties that renewal should operate between them as payment a different rule might apply, but nothing of that nature took place. Defendant had no direct dealings at or with the bank, did not come in contact with or know its officers, and the manager testified he did not know him personally until later.

In *Coleman* v. *Wheel Co.,* 257 Fed. 591, a case well in point here, it was found that a bank which held the note of a customer taken for a valuable consideration is not bound by an agreement between the maker and indorser as to its payment not known to the bank,

and its rights upon a renewal note could not be affected by knowledge which the bank obtained after it acquired the original note for value, and prior to the renewal. The court also expressed the view,—

"it makes no difference that the cashier of the bank had information regarding the existing arrangement between maker and indorser at the time of the renewal of the original note, which was in no sense an extinguishment of the original indebtedness, but merely a postponement of payment."

We find no occasion to disturb the conclusion reached by the trial court, and the judgment will stand affirmed.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.