EVA L. HAMMOND ET AL., APPELLEES, V. ANDREW FROST, APPELLANT.

FILED OCTOBER 9, 1934. No. 28997.

*Courtright, Sidner, Lee & Gunderson,* for appellant.

*Donald E. Devries* and *Cook & Cook, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and THOMSEN, District Judge.

THOMSEN, District Judge.

This is a suit on a note for $1,900, dated December 13, 1920, signed by the defendant Frost with defendant Gurney as indorser. The plaintiffs are the successors of an innocent purchaser for value. The action is divided into two causes—one for reformation of the note, and the other for judgment. The note is made payable to, but not indorsed by, the First National Bank of Fremont, Ne-

braska. The petition alleges that mistakenly the bank's name remained as payee in place of that of defendant Gurney; that the bank has no interest in the note; and asks that the note be reformed to accord with these facts. The answer admits the ownership in Gurney and that the bank had no interest in the note or right or title thereto.

The note is the last of a series of renewals. The first note was given February 10, 1914. It had its origin in a land transaction between Gurney and Frost.

Gurney negotiated for and ultimately acquired land in the Rio Grande valley, Texas. Gurney had never seen the land, so defendant Frost and two others, the former a practical farmer, went there. After the inspection Frost reported to Gurney that he "liked it very much and he had agreed to buy" either 80 or 40 acres. An inference may be drawn from one part of the testimony that Frost's inspection of the land was partly an inducing cause for Gurney's completing the trade with the owners of the Rio Grande property. Frost bought a tract from Gurney, giving notes therefor. One infers also that a year or two later when Gurney abandoned the project and lost his investment, it was perhaps caused by Frost's dissatisfaction with his part of the land. Frost's dissatisfaction arose by reason of two causes—insufficient water for irrigation purposes, and political difficulties between the United States and Mexico, the land being on the border; Gurney describing it as in the nature of a state of war existing between the two countries. The ultimate result was that Gurney agreed to restore all the notes which Frost had given and to cancel his contract. Gurney stated to Frost that one of the notes had been negotiated and that Frost would be required to renew the note from time to time until Gurney would be financially able to take up the whole of the note, in the meantime, on various renewals, reducing the amount. As Frost put it: "He said he was hard up and wanted to know if I would help him out and deduct some every time the notes were renewed." All the notes given by

Frost were ultimately returned to him except the one which had been sold. The latter and all subsequent renewals of it were held by Henry J. Lee. Lee had bought the original before maturity, in the ordinary course of business, for full value, and without knowledge of any defense. This note by successive renewals and payments by Gurney was reduced to the principal sum of $1,900.

The first notes were payable to E. R. Gurney and by him indorsed. The subsequent notes, on the bank's form giving the name of the payee printed as the First National Bank of Fremont, Nebraska, and others in which the name the First National Bank was written were indorsed immediately by Gurney for the First National Bank of Fremont, Nebraska, to Lee, Gurney being then vice-president of the bank. Defendant Frost does not question that Lee was an innocent holder for value in purchasing the first note before maturity and in due course of business. The question which arises comes by reason of the failure to obtain the bank's indorsement on the last of the series of renewals. In this the form was used with the First National Bank of Fremont, Nebraska, printed as the payee. Gurney alone indorsed. Ordinarily, failure to obtain indorsement of payee on note subjects the transferee to all defenses existing between the maker and payee. Comp. St. 1929, sec. 62-320. Does Lee, by such failure, lose his status, once fixed, as an innocent holder for value? The answer is the negative. The time the first note is acquired fixes the character in which the buyer holds it. *Commercial Savings Bank v. Schaffer*, 190 Ia. 1088; *Molsons Bank v. Berman*, 224 Mich. 606; *Stevens v. McLachlan*, 120 Mich. 285; *Hopkins v. Boyd*, 11 Md. 107; *Coleman v. Shortsville Wheel Co.*, 257 Fed. 591; *Beattyville Bank v. Roberts*, 117 Ky. 689; *Harfst v. State Bank of El Campo*, 56 Tex. Civ. App. 31. The converse of the proposition is also true. *Grace v. Strickland*, 188 N. Car. 369, in which it is held that by renewal one cannot acquire the status of an innocent holder in due course and for value

if he did not hold that character when the first note was bought. The chief basis for this rule is that a renewal note, in the absence of an express agreement, is not payment of the original, but only evidence of a continuing obligation. That a renewal note is not payment is well established in Nebraska. *Gilland v. Honeywell,* 103 Neb. 50; *Spear v. Olson,* 104 Neb. 139; *Auld v. Walker,* 107 Neb. 676; *Berwyn State Bank v. Swanson,* 111 Neb. 141; *Nebraska State Bank v. Walker,* 111 Neb. 203; *Exchange Nat. Bank v. Schultz,* 113 Neb. 346; *City Nat. Bank v. Denslow,* 114 Neb. 600.

Defendant Frost says that he never knew Lee held the note. We do not think the point material. However, he had been told that the note had been sold, and the record does not show that Frost would in any way have been affected by whom the purchaser might be. Moreover, Frost's renewals were made for the very purpose of continuing the obligation and keeping it current. In any event, a preponderance of the evidence shows that before the execution of the last note Frost went to Mr. Abbott, an attorney, and consulted him about the whole transaction, and later, when the bank wrote to Frost on behalf of Lee, threatening suit if some arrangement for payment were not made, Mr. Abbott wrote to Gurney insisting upon his paying the note. Mr. Abbott's letter prompted a reply made to Frost directly in which Gurney reiterated his prior promise to pay the note as soon as possible, but stating that "Mr. Lee bought this note of yours in good faith and I think it is your duty both morally and legally to make the note good and to look to me for payment."

Lee, the father of the plaintiffs, died and the plaintiffs became the owners of the note through the settlement of Lee's estate. The payments recorded on the back of the note were made to plaintiff, Eva L. Hammond, who, before her father's death, because of his age, was taking care of her father's affairs. Mr. Abbott, representing Frost, at various times paid to Mrs. Hammond, to apply

on the note, money he had collected from Gurney, and for such payments received Mrs. Hammond's receipts, which he prepared. In those receipts in evidence, he made the payments apply on the principal. Like credits were made on the note by Mrs. Hammond. Later Mrs. Hammond crossed out with a line in ink the words "On prin.," saying she did so because she believed that she had made a mistake and that the payments should have applied on interest only. On this part of the case the defendant Frost contends that an intentional alteration of a credit once applied is such a material alteration as to defeat recovery on the entire note. Cases cited by defendant Frost do not sustain this proposition, and by careful search we have been unable to find authorities to support so broad a statement. The evidence is clear that the indorsement of payments and their application and the subsequent "erasure" were innocently done and without any intent to defraud the maker of the note. Furthermore, the plaintiffs have consented to the application of the payments as on principal instead of on interest, so the defendants have the advantage of Mrs. Hammond's mistake. If an erasure of the character made was done by mistake, it does not have the effect of voiding the note. In 2 C. J. 1213, it is said:

"Although the holder of an instrument has no right to defraud the debtor by erasing credits which have been fairly entered, he may erase credits entered by mistake, and if an instrument appears with credits erased, it is held that this will not vitiate the whole paper, and the most that the party can claim is that he shall be restored to the benefit of the indorsement as originally made." See, also, *Lau v. Blomberg,* 3 Neb. (Unof.) 124, discussion at pages 131 and 132. Nor is it ordinarily classed as a material alteration under the negotiable instruments law. Annotation in 44 A. L. R. 1540 to *Harrington v. Leighton,* 50 S. Dak. 54.

The district court found that because of the facts recited a reformation was not necessary and entered a

judgment for the amount due, with interest. The defendant Frost complains that the judgment should have determined whether or not plaintiffs were entitled to a reformation, but as we view the entire situation we think the court's ignoring the request for a reformation was proper. It may not be every cause or action upon which a court is required to act or in which the plaintiff may require the relief for which he asks. Here the pleadings admit the ownership of Gurney; that the First National Bank of Fremont, Nebraska, had no ownership or interest in the said note. The action for reformation was asked for the purpose of establishing Gurney's ownership of the renewal note and to establish the fact that the bank had no interest in it whatever. The admission of the defendant that Gurney was the owner of the note and that the bank had no interest in it whatever makes the request for reformation to establish these facts unnecessary. Plaintiffs were not required to anticipate the admissions of defendant. The note carries the proper indorsement of Gurney. It found its way into the hands of Lee again before maturity. The fact that Lee held all the requisites of an innocent purchaser of the first note is not disputed in the evidence. This fact establishes the status in which Lee would remain. The fact that Gurney temporarily had the note for the purpose of exchanging for a new one, and for the additional purpose of requiring his indorsement as a guarantee of payment to Lee, might be the motive of Lee's turning the prior note to Gurney and vest the ownership in Gurney temporarily on both that note and the renewal as received. But accepting the fact as the defendant Frost wants it construed, that Gurney was actually the owner of the last renewal note when given, and therefore that it was without consideration, the fact would still remain that Gurney thereafter indorsed it to Lee before maturity in the ordinary course of trade, without any knowledge on Lee's part of any defect or defense, and for value, for under the statute a preexisting debt, which Gurney then would owe to Lee,

constitutes value. Comp. St. 1929, sec. 62-202. See 7 Cent. Dig., Bills & Notes, sec. 933; 3 Dec. Dig., Bills & Notes, sec. 359. The effect would be to reestablish or fortify Lee's status as an innocent purchaser.

This is a trial *de novo*. We have given careful attention to the pleadings and all the evidence and are firmly convinced that the action of the trial court in reaching the conclusion that Frost owes the amount of the note to Lee, an innocent purchaser, that the note was properly indorsed, and that the changes in the indorsements of payment from principal to interest did not affect the status of the note are all correct. The judgment of the district court is therefore

AFFIRMED.

GOOD, J., concurs in the result.