**MATANUSKA VALLEY BANK v.
ARNOLD et al.**

No. A–8189.

District Court, Alaska,
Third Division, Anchorage.

Oct. 20, 1953.

Edward L. Arnell, Anchorage, Alaska, for plaintiff.

**34**

J. L. McCarrey, Jr., Anchorage, Alaska, for defendant.

FOLTA, District Judge.

Plaintiff seeks to recover approximately $11,000 on three negotiable notes, executed in the name of the Davis Construction Co. by the defendant Willard Davis as a member thereof, and payable to the order of the plaintiff. The defendant Arnold contends that she is not liable on the notes because they were executed by her copartner not only without authority but pursuant to a scheme to defraud her devised by her copartner, the defendant Davis, and the plaintiff, and also because she was released by the plaintiff. The defendant Davis has defaulted. The defendant Arnold has also interposed a counterclaim for $3,949.89—the aggregate sum of checks drawn on the partnership account and honored by the plaintiff bank, allegedly pursuant to the scheme aforesaid and in violation of the agreement between the bank and the defendants which, among other things, required, as a prerequisite to charging the partnership account, the counter-signature of Maze, manager of the bank, to all checks.

Upon representations made to the defendant Arnold by Maze, manager of plaintiff, and by her codefendant Davis, that Davis could not obtain a performance bond for the contract awarded him or buy sufficient materials to commence and prosecute the job until the receipt of work progress payments, and that a substantial profit could be made, she was induced to enter into a partnership with Davis on July 17, 1950, the sole object of which was the completion of the construction contract referred to. It thus appears that she was induced to join the venture because of her financial ability. The agreement requires equal contributions of capital, the keeping of books and records, and expressly provides that all checks drawn upon the funds of the firm shall be signed by Davis and countersigned by Maze.

On July 24, October 13 and October 24, 1950, the defendant Arnold personally executed notes in the sum of $5,000 each, payable to the plaintiff. The first was lost, the second was apparently paid on November 20, 1950; the third was paid by the note of Juy 12, 1951. It should be noted at this juncture that the action is not based on any of the foregoing three notes. On March 16, July 12 and October 17, 1951, the defendant Davis executed notes for $3,000, $5,100 and $3,000 respectively. It is asserted that the note of July 12, 1951 is a renewal of the note of October 24, 1950.

Following the execution of the partnership agreement, it appears that, with the connivance of Maze, Davis engaged in several other jobs, two of them for Maze, mingled the funds received from them, neglected the partnership job, left the Territory for a considerable period of time, failed to keep records, charged wages to the partnership job for the time he was engaged on the other jobs, avoided his copartner when she attempted to contact him and finally defaulted. In the light of these acts, the testimony of Davis assumes especial significance. He was evasive and pretended to be unable to recall matters obviously within his recollection to such an extent that the Court can give little weight to his testimony. The failure to keep records, in violation of an express obligation to do so, is under the circumstances proof of fraud. Indeed, it is difficult to avoid the conclusion that the two conspired to defraud an elderly woman of her savings.

Maze did not appear as a witness, presumably because, in the meantime, he had been convicted of embezzling approximately $150,000 from the bank. That he was a party to the alleged scheme to defraud the defendant Arnold cannot be gainsaid in view of his permitting the commingling of funds, his payment of the checks drawn by Davis without his counter-signature in violation of the express terms of the agreement, and his attempts during that time to allay the well founded suspicions of the defendant Arnold.

The defendant Arnold's denial of liability is predicated on the alleged lack

of authority, express or implied, on the part of Davis to bind the firm, because it was a joint adventure and was not engaged in trading, Cf. Federal Service Finance Corp. v. Bishop National Bank, 9 Cir., 190 F.2d 442, all of which, she asserts was well known to the bank, and also on her exhibit "G", a letter from the bank, which she contends constitutes a release, in which it was stated that she was no longer indebted to the bank because the "last note" of October 24, 1950, was paid by a note executed by Davis on July 11, 1951.

The plaintiff contends that these defenses are not available because it is a holder in due course. The defendant Arnold, asserting that the bank is an immediate party to each of the three notes and that therefore they are subject to all defenses and equities, challenges the soundness of the bank's contention that it is a holder in due course and further asserts that the bank took the three notes in bad faith and with notice of Davis' lack of authority.

**1. The Bank As Holder In Due Course**

██ Since the notes were not negotiated or transferred to a third party, the question presented is whether under the Negotiable Instruments Law, Sections 27–1–1 to 27–4–6, A.C.L.A.1949, the payee of a negotiable instrument can be a holder in due course. The authorities are split on this question, Beutel's Brannon, Negotiable Instruments Law, 7th Ed., 675–691, Sec. 52; Annotation, 169 A.L.R. 1455. At common law a payee could be a holder in due course if he was a bona fide purchaser for value and without notice of any infirmities in the instrument. 4 Williston & Thompson, Contracts, 3329, Sec. 1157. This has influenced some courts into holding that the Uniform Negotiable Instrument Law effected no change. Liberty Trust Co. v. Tilton, 217 Mass. 462, 105 N.E. 605. As a matter of pure logic, it cannot be held that a payee can be a holder in due course under the Negotiable Instruments Law because the delivery of a negotiable note to the payee is termed an "issue", Section 27–4–2, A.C.L.A.1949, and in order to transform a holder into a holder in due course, the instrument must be negotiated to him, Section 27–1–72, A.C.L.A., 1949. The better reasoning is that a payee may be a holder in due course if the requisites of that status are otherwise satisfied. Section 27–1–72, A.C. L.A.1949. The only requisite the existence of which is challenged in this case is that of good faith. Whether the plaintiff can satisfy this requirement depends upon the extent to which the knowledge of Maze, its manager, is imputable to the plaintiff.

**2. Imputed Knowledge Doctrine**

██ The well-established principle that the knowledge of the agent is the knowledge of the principal as to acts done by the agent within the scope of his authority and in furtherance of the principal's business is of course applicable to banking corporations and their agents. The knowledge of a bank officer which will be imputed to the bank is knowledge concerning matters within the scope of his authority that he is under a duty to communicate to the bank. American Surety Co. v. Pauly, 170 U.S. 133, 18 S. Ct. 552, 42 L.Ed. 977.

██ The exception to this rule, known as the "adverse agent doctrine", does not seem applicable to this case. The gist of this exception is that the knowledge of the agent will not be imputed to the principal if the agent is engaged in fraudulent activities which it is necessary to conceal in the perpetration of the fraud, Schram v. Burt, 6 Cir., 111 F.2d 557. But even if the adverse agent exception would seem to be applicable to a situation of this kind, the sole actor qualification, Munroe v. Harriman, 2 Cir., 85 F.2d 493, prohibits the application of the exception where, as here, only one agent of the bank deals with the third party. The apparent basis of the qualification is estoppel. The Courts refuse to permit a bank to recognize the agency of its officer for the purpose of accepting the benefit of a note obtained through him and at the same time deny

the knowledge the officer had when the note was made, State Bank of Pamplin v. Payne, 156 Va. 837, 159 S.E. 163. The same result may be reached on the theory of ratification, Muentzer v. Los Angeles Trust & Savings Bank, 7 Cir., 3 F.2d 222. The bank cannot sue on the notes and then attempt to escape the imputed knowledge rule by setting up the fraudulent scheme of its officer, Goldstein v. Union National Bank, 109 Tex. 555, 213 S.W. 584.

In order to avoid the imputed knowledge rule, the agent's interest must be so adverse to that of his principal as to virtually destroy the agency relation. In the case at bar, since it cannot be said that such a condition existed, Maze's knowledge of Davis' lack of authority to make notes on behalf of the firm is imputable to the bank. It necessarily follows that plaintiff is not a holder in due course because it took the three notes in bad faith, and that the defendant Arnold is not liable because Davis had no authority to execute negotiable paper binding on the partnership, Section 28–1–21, A.C.L.A.1949.

It would appear, therefore, that the defendant Davis is the only person liable on the notes in controversy, Sections 27–1–20, 27–1–31, A.C.L.A.1949; Cf. Catlett v. Hawthorne, 157 Va. 372, 161 S.E. 47, Annotation, 4 A.L.R. 258. But the plaintiff asserts that the note of July 12, 1951, executed by Davis renewed the note of October 24, 1950, executed by defendant Arnold, and hence the question as to the effect of a renewal note upon the original is raised.

### 3. The Note Of July 12, 1951

Assuming that the plaintiff was a holder in due course of the note executed by the defendant Arnold on October 24, 1950, did it lose that status by taking the note executed by Davis on July 12, 1951? The answer to this question depends largely on whether the bank accepted the renewal note as payment of the original, Annotation, 35 A.L.R. 1294. As to the nature of such a transaction, the views of bankers and lawyers diverge.

The bankers think in terms of payment, whereas the lawyers see only the continuation of the original debt in another form. It has been said that such transactions should be regarded as payments because the banks so regard them, Childs v. Pellett, 102 Mich. 558, 61 N.W. 54, but where a note is renewed by the original parties it is not perceived how such a transaction could constitute a payment of the debt. Molsons Bank v. Berman, 224 Mich. 606, 195 N.W. 75, 35 A.L.R. 1289. Where, as here, however, the renewal is made by a different party and the bank informs the original maker that she is no longer liable, the intention to accept the renewal note as payment can hardly be open to doubt.

Strictly speaking, Davis' note of July 12, 1951 for $5,100 was not a "renewal", but a substitution of his obligation for that of the defendant Arnold, Grace & Co. v. Strickland, 188 N.C. 369, 124 S.E. 856, 35 A.L.R. 1296; Childs v. Pellett, supra. By accepting Davis' note as payment of the defendant Arnold's obligation on her note of October 24, 1950, the plaintiff released her from further liability. While not a conclusive circumstance by itself, it is significant that the plaintiff promptly surrendered the note of October 24, 1950 to the defendant Arnold.

I am of the opinion, therefore, that the plaintiff is entitled to recover only against the defendant Davis on the notes sued upon.

In view of the conclusions reached it is not necessary to determine the validity of the defendant Arnold's exhibit "G" as a release.

### 4. The Counterclaim

The defendant Arnold's crosscomplaint is based upon breaches of the contract of deposit. It is undisputed that it was agreed between the plaintiff and the defendant that checks would be drawn on the partnership account only in payment of partnership obligations, and that they would be signed by Davis and counter-signed by Maze. The requirement of a counter-signature was for

the protection of defendant Arnold. Not only did Maze agree to this, but on several occasions, when defendant Arnold discussed with him her apprehension over the conduct of her copartner, he not only pretended to be protecting her interest at the very time when the fraudulent scheme was in operation, but suggested that she rid herself of worry by "leaving everything up to him".

Plaintiff, however, contends that there was no breach of contract, but rather a tort sounding in conversion. But it must be conceded that in honoring checks not counter-signed by Maze, the plaintiff breached the contract as well as committed the tort of conversion. In this situation, the defendant could waive the tort and sue on the contract. Felder v. Reeth, 9 Cir., 34 F.2d 744. That a deposit may be the subject of contract between the bank and the depositor is settled. And the depositor may impose conditions upon the withdrawal of his funds, the failure to observe which constitutes a breach on the part of the bank for which it is liable, Henderson v. Greeley National Bank, 111 Colo. 365, 142 P. 2d 480, in damages. In either event, the amount recoverable would be the same. Main Belting Co. v. Corn Exchange National Bank, 325 Pa. 168, 188 A. 865. Plaintiff's contention, therefore, that the counterclaim will not lie under Section 55–5–52, A.C.L.A.1949, because it is not a contract claim which was in existence at the commencement of the action is without merit not only for the reasons stated, but also because Rule 13, Fed. Rules Civ.Proc., 28 U.S.C.A., supersedes the section relied upon to the extent of any conflict between them, Kuenzel v. Universal Carloading and Distributing Co., D.C., 29 F.Supp. 407.

It may well be that defendant's counterclaim was compulsory rather than permissive, but aside from the fact that it would appear to have arisen out of the same series of transactions as gave rise to plaintiff's claim, and that all necessary parties are before the Court, it is not necssary to decide this point.

Plaintiff further contends that the counterclaim is premature because there has been no accounting between the partners. There is considerable plausibility to this contention, but it will not bear analysis. It is undisputed that checks at least in the total amount of the counterclaim were drawn upon and charged to the partnership account, in violation of the terms of the contract of deposit and for other than partnership purposes. Maze's counter-signature not only was required by the contract, but this requirement of a counter-signature was for such a diversion of partnership funds. I conclude, therefore, that the defendant Arnold, the only litigating defendant, is authorized to interpose such a counterclaim, and that the plaintiff has no standing to demand an accounting before it can be held liable for its wrongful acts.

### Conclusion

I am of the opinion, therefore, that the plaintiff is entitled to recover the amount sued for only from the defendant Davis in his individual capacity, and that the defendant Arnold is entitled to recover on her counterclaim.